**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 5 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SUE E. ADAMS,

      Plaintiff-Appellant,

v.

WASHBURN UNIVERSITY OF
TOPEKA,

      Defendant-Appellee.

No. 02-3071

(D.C. No. 98-CV-4199-RDR)
(D. Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Judge, **BRISCOE**, Circuit Judge, and **SHADUR,** District
Judge.[**]

---

Plaintiff Dr. Sue Adams filed this action against her former employer, defendant

Washburn University, under Title VII, 42 U.S.C. § 2000e *et. seq*. Plaintiff appeals the

district court's entry of summary judgment in favor of Washburn. We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Milton I. Shadur, Senior District Judge, Northern District of
Illinois, sitting by designation.

I.

In 1994, plaintiff applied for an educational technology lecturer position in the Department of Education at Washburn. The position was a non-tenure track, three-year appointment. During the interview process, she met with the search committee, faculty members, and administrators, including Dr. Wayne Sheley, who was then vice president of academic affairs. During the same time period, plaintiff also applied for the position of director of continuing education at Washburn.

After she was denied both positions, plaintiff filed a complaint with Washburn alleging Dr. Sheley made improper sexual advances and comments toward her during the interview process. She asserted that he contacted her outside of the interview process, commented about her body and appearance, offered her a higher salary if she would work on special projects directly with him, and encouraged her to apply for a position where she could work more closely with him. Plaintiff alleged that, due to her rejection of these overtures, she was denied the lecturer position notwithstanding the fact that the other qualified candidates had withdrawn from consideration for the position. Plaintiff and Washburn negotiated a settlement and plaintiff was awarded the three-year lecturer position in exchange for her release of any claim against Washburn.

From 1994 to 1997, plaintiff successfully fulfilled the requirements of her position. During her tenure, she helped create and teach new graduate courses in educational technology and produced two manuscripts for publication. Her reviews from students and

2

peers were favorable. In 1997, Washburn determined that the lecturer position should become a permanent tenure track position. Washburn advertised the position and initiated a formal application and interview process. Dr. David Van Cleaf, chair of the Department of Education, asked plaintiff and other faculty members for input into the job description for the position. A doctorate in educational technology, which plaintiff lacked, was removed as a requirement for the position. Instead, a doctorate in education with an emphasis in educational technology was listed as a requirement.

Pursuant to Washburn policy, Dr. Van Cleaf selected a five-member search committee to review applications and make recommendations for the position. None of the members who served on the 1994 search committee served on the 1997 search committee. Plaintiff was not selected as one of the top candidates chosen to be interviewed for the position because the committee concluded she did not have the requisite course work or background in educational technology. Another person, whose background included several courses in educational technology, was selected for the position.

Plaintiff filed this action against Washburn alleging she was denied the tenure track position in retaliation for her 1994 internal sexual harassment complaint. Specifically, she alleged that Dr. Sheley used his position at Washburn and his friendship with Dr. Van Cleaf to influence the search committee. The district court granted Washburn's motion for summary judgment, concluding that plaintiff's case was "too

heavily dependent upon conjecture to establish a reasonable inference that her failure to obtain an interview or to be hired for the tenure track position was because she filed a discrimination complaint in 1994." Aplt. App. at 407.

## II.

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Simms, 165 F.3d at 1326.

## III.

Plaintiff contends the district court erred in granting summary judgment because she presented sufficient evidence to establish a prima facie case of retaliation. Under Title VII, an employer may not discriminate against an employee in retaliation for the employee's opposition to unlawful employment practices. See 42 U.S.C. § 2000e-3(a). Title VII retaliation claims are subject to the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Pastran v. K-Mart Corp., 210

4

F.3d 1201, 1205 (10th Cir. 2000).  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case.  Id. at 1205-06.  To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination, (2) adverse employment action was taken against her subsequent to the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action.  Id. at 1205.  Plaintiff can establish the requisite causal connection by producing "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982).  If plaintiff successfully establishes a prima facie case, then Washburn must offer a legitimate, non-discriminatory reason for its employment decision.  See Pastran, 210 F.3d at 1206.  If Washburn offers such a reason, then plaintiff must demonstrate that its proffered reason is pretextual.  Id.

The district court concluded that summary judgment was appropriate because plaintiff failed to establish the third element of the prima facie case.  Specifically, the court concluded she failed to show a causal connection between her 1994 internal complaint and Washburn's hiring selection in 1997.  Plaintiff contends that she presented sufficient evidence to create a genuine issue as to whether Dr. Sheley used his relationship with Dr. Van Cleaf and his position of authority at Washburn to influence the selection process in retaliation for her 1994 complaint.

5

In support of her claim, plaintiff presented evidence that Dr. Sheley and Dr. Van Cleaf had a mentor relationship, that Dr. Sheley was upset when plaintiff made the allegations against him in 1994, and that Dr. Sheley believed Washburn should have investigated the allegations more thoroughly. In addition, Dr. Sheley once commented to Dr. Van Cleaf that he did not think plaintiff would be interested in staying at Washburn beyond her three-year lecturer position. Plaintiff also claimed that a faculty member informed her that Dr. Sheley and Dr. Van Cleaf had traveled together and had discussed the job search. Plaintiff contended that another faculty member told her that he "felt" that Dr. Van Cleaf and Dr. Sheley had "gotten together" and prevented plaintiff from getting the job. Aplt. App. at 145. Plaintiff further claimed that Dr. Van Cleaf showed her where her new office would be if she was selected for the position and encouraged her to create her schedule for Fall 1997, but that his encouragement abruptly changed after he allegedly met with Dr. Sheley.

Plaintiff also attacks the legitimacy of the search committee's selection process. She points to the fact that Dr. Van Cleaf attended the first committee meeting where plaintiff was in effect eliminated as a candidate, yet he failed to attend additional committee meetings. At that meeting, Dr. Van Cleaf took the position that plaintiff was not qualified for the position. She alleges that once Dr. Van Cleaf did Dr. Sheley's "dirty work" by eliminating her as a candidate, Dr. Van Cleaf no longer had a reason to attend the meetings. In addition, the search committee was prevented from looking beyond the

6

face of her application because Dr. Van Cleaf instructed the committee not to check into the accuracy of the information submitted by each candidate. Plaintiff also points to the fact that Dr. Van Cleaf did not inform the committee that she had provided input into the position description, and that the search committee did not consist of faculty members who were the most knowledgeable in the field of educational technology. Finally, plaintiff contends that she was clearly qualified for the position. She points to the 1994 search committee's conclusion that she was specialized in the field of educational technology, her favorable student and peer reviews, and the three years of experience she gained in the field as a lecturer.

After reviewing the record and viewing the evidence in the light most favorable to plaintiff, we conclude that she has failed to establish the requisite nexus between her 1994 complaint and Washburn's decision not to hire her for the tenure track position in 1997. The three-year gap between her complaint and Washburn's employment decision is too great to support an inference of retaliatory motive. See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1321 (10th Cir. 1999) (opining that two-year gap undercut an inference of retaliatory motive).

In the absence of a close temporal relationship between her 1994 complaint and the 1997 adverse hiring decision, plaintiff must present additional evidence to establish causation. See Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1395 (10th Cir. 1997). Her evidence that Dr. Sheley was upset when she filed her complaint in 1994 is not

evidence of causation. Nor does Dr. Sheley's comment to Dr. Van Cleaf that he believed plaintiff would not want to continue in the position beyond her three-year lecturer position, on its face, indicate a discriminatory animus toward her. Further, plaintiff's statements that faculty members, who were not on the selection committee, informed her that Dr. Sheley and Dr. Van Cleaf met and discussed the job search is inadmissible hearsay that we cannot consider. See Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (holding "Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment").

More importantly, plaintiff failed to present any evidence that Dr. Sheley or Dr. Van Cleaf played a part in the adverse employment decision. The crux of her claim is that Dr. Sheley used his relationship with Dr. Van Cleaf and his position at Washburn to influence the search committee. "However, evidence of an opportunity to influence does not amount to evidence of actual influence and [plaintiff's] mere speculation about [Dr. Sheley's and/or Dr. Van Cleaf's] influence is not enough to demonstrate a genuine issue of material fact." Bullington, 186 F.3d at 1321. Indeed, the evidence is to the contrary. Although Dr. Van Cleaf expressed his opinion regarding plaintiff's qualifications to the committee, "he didn't dwell on how bad she was." Aplt. App. at 173. Nor was he "an advocate for or against anybody in the committee deliberations." Id. Rather than being unduly influenced by Dr. Van Cleaf, the record demonstrates that the committee *independently* eliminated plaintiff as a candidate because she lacked the necessary course

8

work and background in educational technology. Dr. Jerry Gray, head of the search committee, stated that he believed the committee selected the best candidate for the job and that, based on an analysis of plaintiff's transcripts, Dr. Van Cleaf could have concluded plaintiff was not qualified for the position. In fact, plaintiff does not challenge the qualifications of the candidate who was hired for the position, and the fact that plaintiff may have been qualified for the position does not support an inference of discrimination. Further, Dr. Van Cleaf winnowed out the applications of clearly unqualified candidates before he submitted the applications to the search committee for review. Thus, if, as plaintiff suggests, Dr. Van Cleaf wanted to ensure that she did not get the position, it appears unlikely that he would submit her application to the committee where he would have little, if any, influence over their hiring decision.

Similarly, plaintiff's complaints regarding the procedures used by the search committee do not support an inference of retaliation because the committee applied the same standards and procedures when considering each applicant. The evidence of Dr. Van Cleaf's "attitude change" and the fact that he attended only the first committee meeting where plaintiff was eliminated as a candidate, coupled with other evidence, potentially could support an inference of retaliation. However, plaintiff failed to provide this court with additional evidence needed to support such an inference and "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine.'" Lawmaster v. Ward, 125 F.3d 1341, 1347

9

(10th Cir. 1997).

We conclude that plaintiff has failed to establish a nexus between her 1994 complaint and Washburn's 1997 employment decision. Because she cannot demonstrate a prima facie case of retaliation, it is unnecessary to address her pretext argument. AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge